

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

November 21, 1963

Honorable R. L. Coffman
Administrator
Texas Employment Commission
Austin 1, Texas

Dear Mr. Coffman:

Opinion No. C- 181

Re: An interpretation of the provisions authorizing merit increases to employees of the Texas Employment Commission.

You have requested our opinion as to whether the provisions of House Bill 86, Acts of the 58th Legislature, Regular Session, 1963, found in Article V, Section 1, 8 L, or provisions found within the appropriation for the Texas Employment Commission in Article III are controlling with regard to the granting of merit increases to employees of the Texas Employment Commission.

Section 1, 8 L, Article V, General Provisions, of House Bill 86, sets forth specific provisions governing Merit Salary Increases in recognition of continuing outstanding performance of State employees "unless otherwise provided. . ."

The specific provision within the Commission's appropriation is found at page III-59 and provides as follows:

"Salary adjustments and Merit Increases within designated salary ranges shall be governed by agreements with the Federal Government pursuant to Federal standards for a Merit System of Personnel Administration." (Emphasis added).

As a guide to a proper understanding of the question presented, it is deemed helpful to first review the Texas Employment Commission. It is a State agency and its employees are State employees. It was contemplated under this coordinated Federal and State Unemployment Compensation System that the administration thereof would be handled through designated State agencies. The administration of the program is wholly financed

by grants from the Federal Government and the Commission is
acting as the disbursing agency for the Federal Government.
The Commission was established in 1936 by Article 5221b-8,
Vernon's Civil Statutes.  Article 5221b-8 through Article
5221b-10 sets forth the responsibilities and powers of the
Commission.  Section (a) of Article 5221b-9, for example,
prescribes certain duties and powers of the Commission, and
in Section (i) of Article 5221b-9, the Commission is directed
to cooperate to the fullest extent with the Social Security
Board.

Under this coordinated Federal and State system,
the Federal Government uses the taxes which it collects to
pay the cost of administration of both the Federal and State
plans.  This money used to defray administrative costs is sent
to the states by the Secretary of the Treasury upon certifica-
tion from the Social Security Board in compliance with 42 U.S.C.A.,
Section 502a upon proper compliance with Section 503 of Title
42, U.S.C.A. which provides as follows:

"(a)  The Board shall make no certifica-
tion for payment to any state unless it finds
that the law of such State, approved by the
Board under Sections 1600-1611 of Title 26,
includes provision for--

"(1)  Such methods of administration
(including after January 1, 1940, methods
relating to the establishment and mainte-
nance of personnel standards on a merit
basis, except that the Board shall exercise
no authority with respect to the selection,
tenure of office, and compensation of any
individual employed in accordance with such
methods) as are found by the Board to be
reasonably calculated to insure full payment
of unemployment compensation when due; . . ."
(Emphasis added).

In Attorney General's Opinion V-427 (1947), this
Department held that with respect to Federal funds expended,
the Commission is primarily governed by the standards prescribed
by the Social Security Administrator and the U.S. Employment
Service of the Department of Labor and the rules and regulations
adopted by the Commission to meet such standards.  In Attorney
General's Opinion WW-1242 (1962), the authority of the Commission
to administer the employment program in the most efficient manner

was held to be within the discretion of the Commission notwithstanding special provisions within the General Appropriation Act of the 57th Legislature to the contrary. Thus, we recognize the somewhat different status with regard to the Commission in comparison with other State agencies whose funds are not derived from Federal grants. In fact, such methods were recognized in House Bill 86 at page III-56, which provides as follows:

> "In order to comply and conform with the terms of Federal laws and regulations and standards under which such moneys are granted for administration shall be expended in accordance with the terms of the Texas Unemployment Compensation Act, the standards of the Bureau of Employment Security and/or United States Employment Service or successors, and the rules or regulations adopted by the Texas Employment Commission to meet such standards. Travel expense and salaries of the employees of the Texas Employment Commission and members of the Commission shall be paid in accordance with agreements made between the Commission, the Bureau of Employment Security and/or the United States Employment Service or successors, which agreements shall provide for salaries within the limits herein prescribed and in conformity with Federal standards of a Merit System for a Personnel Administration, provided, however, that salary rates and travel expense reimbursements shall conform with the provisions of the Act governing State employees. . . ." (Emphasis added).

In view of the fact that it has been long recognized that agreements in compliance with applicable Federal social security regulations are necessary to qualify for Federal grants, it is concluded that the establishment of the recent Texas Employees Classification Act should be construed in harmony with these recognized and prior conditions. Therefore, so long as salary adjustments and increases do not increase the employee's salary to an amount outside of the salary ranges designated by House Bill 86, they are valid as a part of an agreement with the Federal Government in the establishing and maintaining of a merit system.

In reaching this result, we are particularly persuaded by the mandatory language found in the provisions of Article III of House Bill 86, as quoted above, by the historical recognition of such agreements between the Commission and the Federal Government and by the fact that the Legislature has limited such

agreements only to the extent that the resulting employees' salary not exceed the designated salary ranges of House Bill 86. It is further observed that the Legislature has recognized the situation of a State-administered Federal grant program in an area of such mutual importance, and it is concluded that if the Legislature had intended to abolish such a system it could have and would have done so in a clear and convincing manner. This it did not do, and therefore, it is concluded that the granting of Merit Increases to employees of the Texas Employment Commission is governed by agreements with the Federal Government pursuant to Federal standards for a Merit System of Personnel Administration.

### S U M M A R Y

Merit Increases within the designated salary ranges for employees of the Texas Employment Commission are governed by the provisions found at page III-59 of House Bill 86, Acts of the 58th Legislature, Regular Session, 1963, which provides that Merit Increases within the designated salary ranges are governed by agreements with the Federal Government pursuant to Federal standards for a Merit System of Personnel Administration.

Yours very truly,

WAGGONER CARR
Attorney General

By: Paul Phy
Assistant

PP:mkh

APPROVED:
OPINION COMMITTEE

George Gray, Acting Chairman
Pat Bailey
Paul Robertson
Nicholas Irsfeld
W. V. Geppert

APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone